IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBIN DURHAM,                        )
                                     )
                    Plaintiff,       )
                                     )
            v.                       )        1:10CV405
                                     )
CAROLYN W. COLVIN,[1]                )
Acting Commissioner of Social Security, )
                                     )
                    Defendant.       )


MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

    Plaintiff, Robin Durham, brought this action pursuant to Sections 205(g) and 1631(c)(3)

of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain

judicial review of a final decision of the Commissioner of Social Security denying her claims for

Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II

and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative

record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

    Plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security

Income on March 14, 2006, alleging a disability onset date of February 3, 2006. (Tr. 119-126,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

127-130.)[2] Her applications were denied initially (Tr. at 78, 79) and upon reconsideration (Tr. at 80, 81). Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 117-18.) Plaintiff, along with her attorney and a vocational expert ("VE"), attended the subsequent hearing on January 13, 2009. (Tr. at 14.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act. (Tr. at 26.)

In rendering his disability determination, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.

2. The claimant has not engaged in substantial gainful activity since February 3, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: neck and back problems and depression and anxiety (20 CFR 404.1521*et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926). . . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, [and] standing or walking 6 hours in an 8 hour workday, with normal breaks. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling on arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determined [sic] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to set for long periods of time (20 CFR § 404.1567b). She can perform climbing, balancing,

_____

² Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #6].

stooping, kneeling, crouching or crawling motions, but no more than frequent motion of the neck. She has no other visual, manipulative, communicative, or environmental restrictions. Due to her depression and anxiety, the claimant is limited to simple, repetitive, routine tasks.

(Tr. at 16, 18.)

The ALJ then considered Plaintiff's age, education, work experience, and the above residual functional capacity ("RFC"), along with the VE's testimony regarding these factors, and determined that, although Plaintiff was unable to perform any of her past relevant work, she could perform other jobs that exist in significant numbers in the national economy. (Tr. at 24-25.) The ALJ therefore concluded that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 26.)

On December 15, 2009, the Appeals Council granted Plaintiff's request for review of the ALJ's decision. In conducting its review, the Appeals Council found that the ALJ "never asked the vocational expert to consider the exact residual functional capacity that is contained in finding 5 of the decision[,] thus making the decision, as written, inaccurate." (Tr. at 8.) However, the Council also found that hypothetical question at the hearing posed an RFC that was, in fact, more restrictive than the RFC stated in the decision. Specifically, the question contained "restrictions related to a sit/stand option and frequent movement of the neck" which were not included in the RFC at finding 5. Therefore, the Appeals Council concluded that Plaintiff "remains capable of performing the jobs named" by the vocational expert. (Tr. at 8.)[3] Because Plaintiff submitted no evidence to challenge this conclusion during the review period,

_____

[3] The Appeals Council also corrected the Plaintiff's date last insured to September 30, 2009.

the Appeals Council's decision became the Commissioner's final decision for purposes of judicial review on March 25, 2010. (Tr. at 3-6).

## II.    LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where

conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

---

[4] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: neck and back problems, depression, and anxiety. (Tr. at 16.) The ALJ found at step three that these impairments did not meet or equal a disability listing. Accordingly, he assessed Plaintiff's RFC and determined that Plaintiff could perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with no more than frequent motion of the neck. Due to Plaintiff's mental impairments, the ALJ also limited her to simple, repetitive, routine tasks. (Tr. at 19.) Based on this determination, the ALJ determined at step four of the analysis that Plaintiff could not return to her past relevant work. However, he concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the community and was therefore not disabled. (Tr. at 24-26.)

Plaintiff now argues that the ALJ erred in (1) failing to identify all of Plaintiff's severe impairments, (2) failing to properly evaluate whether Plaintiff's cervical spine impairment meets

---

[6]  A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

the requirements of Listing 1.04A, (3) giving no weight to the treating psychiatrist's opinion that Plaintiff meets Listings 12.04 and 12.06, (4) failing to include all of Plaintiff's limitations in both the RFC and the corresponding hypothetical, (5) formulating a hypothetical to the vocational expert which inaccurately reflected the RFC, and (6) relying on the vocational expert's testimony. (Pl.'s Br. [Doc. #9] at 5-6.) Defendant contends otherwise and urges that substantial evidence supports the Commissioner's decision. (Def.'s Br. [Doc. #12] at 20.)

A.    Severe Impairments

Plaintiff first argues that the ALJ erred in failing to include her bipolar disorder and bilateral hand and arm problems as severe impairments at step two of the sequential analysis. According to Social Security Administration guidance, an impairment is "not severe" if it constitutes only "a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities."  SSR 96-3p, 61 Fed. Reg. 34469; see also 20 C.F.R. § 404.1520(c). Applicable regulations further provide that "basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

Plaintiff bears the burden of showing severity at step two.  See Hunter, 993 F.2d at 35 ("Through the fourth step, the burden of production and proof is on the claimant.").  Although courts generally consider an impairment in any one of the above-quoted areas severe so long as

it is not obviously slight, insignificant, or meaningless, see <u>Martin v. Heckler</u>, 748 F.2d 1027,

1032 (5th Cir. 1984), a plaintiff nonetheless must support any showing of severity with relevant

medical evidence. In particular,

> the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).

> The determination at step two is based on medical factors alone. <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c). The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a). A claimant's statements regarding the severity of an impairment is not sufficient. <u>Adame v. Apfel</u>, 2000 WL 422341 at *3-4 (D. Kan. March 20, 2000); <u>Flint v. Sullivan</u>, 743 F. Supp. 777, 782 (D. Kan. 1990).

<u>Rivas v. Barnhart</u>, No. 05-1266 MLB, 2006 WL 4046153, at *4 (D. Kan. Aug. 16, 2006).

In the instant case, the ALJ identified Plaintiff's neck and back problems, depression, and

anxiety as her only severe impairments at step two. (Tr. at 16.) Plaintiff now contends that both

bipolar disorder and her "bilateral arm and hand problems, which involve numbness, pain, and

weakness," constituted additional severe impairments. (Pl.'s Br. at 6.)

However, the only reference to bipolar disorder in the record appears in the form

opinion of psychiatrist Dr. Robin Sanders.[7] When asked whether Plaintiff had "bipolar

syndrome with a history of episodic periods manifested by the full symptomatic picture of both

---

[7] The ALJ assigned little weight to Dr. Sanders' opinion for the reasons discussed in subsection C below.

manic and depressive syndromes (and currently characterized by either or both syndromes),"
Dr. Sanders circled "Yes" on the form. Dr. Sanders then explained that Plaintiff "[r]eports [a]
history of higher & lower [moods]," but that presently Plaintiff only manifested depression. (Tr.
at 405.) This evidence presents three significant problems for Plaintiff. First, as set out above,
the severity - and in this case, the existence - of an impairment must be based on more than a
plaintiff's own statements. Adame, 2000 WL 422341, at *3-4. Second, a mere history of bipolar
disorder fails to show that Plaintiff had such an impairment that was severe during the time she
alleges she was disabled. Third and finally, the ALJ included both depression and anxiety as
impairments at step two and limited her to simple, routine, repetitive tasks as a result of those
disorders. (Tr. at 18.) Plaintiff never explains how the inclusion of bipolar disorder as an
additional impairment would further impact her ability to work. In light of these findings,
substantial evidence supports the ALJ's exclusion of such an impairment as "severe."

Plaintiff encounters nearly identical problems regarding her alleged arm and hand
problems. Little contemporaneous medical evidence supports Plaintiff's subjective allegations
of arm and hand numbness, pain, and weakness between her alleged onset date, February 3,
2006, and her hearing. Only one examiner, Dr. Eason, found that Plaintiff had any muscle
weakness during the time period in question, noting "weakness [of] grip and grasp" in April
2006. (Tr. at 20, 316.) However, he noted no evidence of pain or numbness. (Id.) Another
examiner, Dr. Rogers, found no evidence of sensory or reflex loss, pain, or numbness when he
examined Plaintiff in January 2007, and he specifically noted that she had normal muscle
strength, including a grip and pinch strength of 5/5 in both hands. (Tr. at 21, 357-59.)

Plaintiff's subjective complaints of pain and numbness also are plagued by inconsistencies during the relevant time period. The medical records reveal that she sometimes complained of radiating pain and numbness in both arms (Tr. at 17, 21, 22, 314, 356, 366), while at other times she complained of symptoms on only one side (Tr. at 17, 373) or denied that she suffered from any pain or numbness at all (Tr. at 20, 371). Moreover, Plaintiff fails to explain how adding arm and hand problems to her list of severe impairments would alter the outcome of her disability claim. Even in the brief now before the Court, Plaintiff argues at times that her alleged numbness, weakness, and pain were symptoms of her back and neck problems, rather than distinct impairments. (Pl.'s Br. at 6-8; see also subsection B below; Tr. at 17, 20, 21-22.) The ALJ specifically considered Plaintiff's arm and hand problems in evaluating Plaintiff's back and neck impairments, noting her complaints of "increasing neck pain and pain that radiated to her right upper extremity and occasionally left upper extremity . . . reportedly radiat[ing] to all fingers on the right hand and the left little finger . . . [and] numbness." (Tr. at 17.) The ALJ subsequently concluded that Plaintiff's "complaints of shoulder and arm and hand pain and numbness are not adequately explained by the findings from her cervical spine magnetic resonance imaging scan or examination by her orthopedic surgeon." (Tr. at 22.) Because the ALJ considered and discussed the effects of Plaintiff's alleged arm and hand problems in terms of limitations from her back and neck impairments, he rendered harmless any error at step two.[8]

---

[8] Plaintiff in her Reply Brief contends that "[a]ppropriate evaluation of Plaintiff's arm and hand impairments would lead to a finding that Plaintiff has significant limitations on handling, fingering and reaching." However, the ALJ considered the evidence regarding Plaintiff's arm and hand symptoms in determining Plaintiff's RFC, as noted above. Moreover, in considering limitations related to Plaintiff's neck impairment, the Vocational Expert testified to available positions that involved no more than occasional reaching, handling, and fingering. (Tr. at 41-42, 44.)

B.    Listing 1.04A

Plaintiff next contends that the ALJ failed to properly evaluate whether Plaintiff's cervical spine impairment meets the requirements of Listing 1.04A.  Plaintiff has the burden of showing that her impairment meets a listing, and she must do so by showing  that her impairment satisfies all of the criteria specified in the listing.  <u>Maggard v. Apfel</u>, 167 F.3d 376, 380 (7th Cir. 1999).  In the case of Listing 1.04A, Plaintiff must show that she meets three specific criteria. She must first show that she suffers from a spinal disorder, such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture."  20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04.  Second, she must demonstrate that the above spinal condition results in "compromise of a nerve root (including the cauda equina) or the spinal cord."  <u>Id.</u>  Lastly, she must show "[e]vidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]"  <u>Id.</u>

After reciting the above requirements in his decision, the ALJ in the present case recounted the following objective medical findings from Plaintiff's orthopedic surgeon, Theodore M. Pitts, M.D.:

> The cervical MRI scan was performed at Durham Regional Hospital in July 2006 and revealed C5-6 mild degenerative disc disease with mild to moderate bilateral foraminal encroachment.  At C6-7 there was a small disc protrusion.  On physical examination[, Plaintiff's] neck had a 50 percent decrease in range of motion.  Her deep tendon reflexes were normal throughout both upper and lower extremities.

Strength testing was normal throughout both upper and both lower extremities. Straight leg-raising was negative while in the sitting position.

(Tr. at 17, 365-66.)  The ALJ also noted Plaintiff's subjective complaints of increasing, radiating neck pain and occasional numbness, but he concluded that, based on the objective findings, Plaintiff's condition did not meet the criteria in Listing 1.04A.  (Id.)  This conclusion is supported by the evidence described in the decision, specifically the findings of Plaintiff's orthopedic surgeon as set out above.

Plaintiff now challenges the ALJ's step three determination, citing two findings of decreased grip and grasp strength in April 2005 and April 2006 (Tr. at 251, 316), myelogram and CT readings from April 2005 indicating mild to moderate nerve root compression at C5-6 (Tr. at 265, 266), and a November 2004 MRI indicating mild spinal stenosis and mild bilateral foraminal stenosis at C5-6 (Tr. at 245).  Plaintiff also reiterates her self-reports of radiating pain and numbness.  (Pl.'s Br. at 7-8.)  Plaintiff urges that this additional evidence directs a finding of disability at step three.

However, Dr. Eason, the DDS examiner who found that Plaintiff had "weakness [of] grip and grasp" in April 2006, also found "nothing to suggest that [Plaintiff] has significant radiculopathy or herniated disk-like syndrome." (Tr. at 20, 316.)  In other words, he failed to tie Plaintiff's decreased grip to any nerve root compression.  In fact, neither Dr. Eason nor a second consultative examiner, Dr. Rogers, found any evidence of sensory or reflex loss, pain, or numbness when examining Plaintiff.  (Tr. at 20, 21, 22, 316, 358.)  Dr. Rogers, who examined Plaintiff in January 2007, also noted that Plaintiff had normal muscle strength, including a grip and pinch strength of 5/5 in both hands, a full range of neck motion, and negative straight leg

raising bilaterally. (Tr. at 21, 357-59.) The only other objective finding of "fair" bilateral grip strength - or indeed of muscle weakness of any kind - also fails to connect such weakness to nerve root compression, as required by Listing 1.04A. Furthermore, that assessment was made by a physical therapist and occurred in April 2005, ten months prior to Plaintiff's alleged onset date. (Tr. at 249-53.) In addition, as previously discussed, even Plaintiff's subjective complaints of pain and numbness are rife with inconsistencies. She variously complained of radiating pain and numbness in both arms (Tr. at 17, 21, 22, 314, 356, 366), on only one side (Tr. at 17, 373), or not at all (Tr. at 20, 371). Indeed, in July 2006, Plaintiff described the frequency of her numbness as occasional. (Tr. at 17, 366.) Overall, substantial evidence supports the ALJ's finding that Plaintiff fails to meet the requirements of Listing 1.04A.

C.      Treating Physician Opinion

Plaintiff's contentions regarding Listings 12.04 and 12.06 similarly fail, as they rely on the form opinion of psychiatrist Robin Sanders, which the ALJ declined to give any weight. Plaintiff now challenges the ALJ's application of 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), better known as the "treating physician rule," in disregarding Dr. Sanders' opinion.[9]

The treating physician rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

---

[9] These provisions were previously codified at 20 C.F.R. §§ 404.1527(d) and 416.927(d).

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6) and 416.927(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

Moreover, even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairment, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

In the present case, Dr. Sanders opined, in pertinent part, that Plaintiff had only slight restrictions in activities of daily living, but that she experienced marked difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace. He also stated that Plaintiff would have repeated (i.e., three) episodes of decompensation each year. (Tr. at 22, 408.) ALJ assigned no weight to the opinion of Dr. Sanders and explained the rationale for his decision at great length, writing that

> Dr. Sanders' medical source statement as to his opinion of the claimant's ability to perform work activities is conclusory, providing very little explanation of the evidence relied on in forming that opinion. Indeed, it would appear that Dr. Sanders['] assessment of the claimant's capacity for work-related activities was overshadowed by the claimant's subjective complaints, which are not supported by Dr. Sanders['] own clinical findings and notes. . . . The undersigned was able to see only one encounter between [claimant] and Dr. Sanders in the medical evidence of record[,] and that was in August 2008 when the claimant noted increased stress due to her best friend's death and the claimant's son serving in the Army and about to deploy overseas. Her dosage of Cymbalta and Buspar were increased. Her panic attacks had returned. He noted that her medications worked well when the claimant was compliant when she was not so upset. His assessment then was mood disorder, not otherwise specified and panic disorder with agoraphobia. Dr. Sanders made no recommendation as to whether the claimant was unable to work. Additionally, his remark of the claimant having three repeated episodes of decompensation annually is not supported by the record as a whole, or the Guilford Center notes. Dr. Sanders' conclusion observations are largely unsupported by the objective clinical findings. Therefore, the undersigned will not give credence to Dr. Sanders opinion.

(Tr. at 23.)

In her Brief, Plaintiff stresses that all medical source opinions must be evaluated pursuant to 20 C.F.R. § 404.1527, "which requires consideration of the length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion by medical evidence, consistency of opinion with the record as a whole, and specialization of the treating physician." (Pl.'s Br. at 8.) However, with respect to the length of treatment, frequency of examination, and nature and extent of the treatment relationship, Plaintiff does not contest the ALJ's statement that Dr. Sanders had only one prior encounter with Plaintiff.

In addition, with respect to the medical evidence and the consistency with the record as a whole, the ALJ noted the lack of supportive, objective medical evidence supporting Dr. Sanders' opinions. Specifically as to Listings 12.04 and 12.06, both of these listings require that the claimant meet a given list of symptoms known as "A" criteria, and at least two of the following "B" criteria: (1) marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, and (4) repeated episodes of decompensation, i.e., three or more, each of extended duration. 20 C.F.R. Part 404, Subpt. P, Appendix I, §§ 12.04 and 12.06. Here, Dr. Sanders opined that Plaintiff suffered marked difficulties in social functioning and repeated episodes of decompensation, but found her less than markedly limited in terms of activities of daily living and maintaining concentration, persistence, or pace. (Tr. at 408.) In other words, he opined that she met two "B" criteria. However, all other medical sources found Plaintiff less limited, meeting none of the four "B" criteria. (See Tr. at 339, 354.) When discussing these

criteria in his opinion, the ALJ noted that Plaintiff has, in fact, experienced "two episodes of decompensation, each of extended duration, but these were a two day substance abuse admission in 2000 where she left against medical advice and an admission in 2006, again related to detox and polysubstance abuse. Since that time [Plaintiff] has reportedly been free of any illegal drugs or alcohol use. When compliant with medications and treatment[, Plaintiff] should be able to function, as noted by Dr. Gibbs [consultative] evaluation." (Tr. at 18.) Plaintiff presents no evidence to the contrary aside from Dr. Sanders' unsupported opinion, and none is apparent from the record. The ALJ gave extended explanation for not giving credence to Dr. Sanders' opinion, and substantial evidence supports the ALJ's finding that Plaintiff fails to meet the requirements of Listings 12.04 and 12.06.

D.      RFC

Plaintiff next challenges the RFC assessment, arguing that the ALJ erred by failing to include the following additional limitations: no public interaction; only occasional interaction with coworkers; frequent breaks from work activity; restrictions in handling, fingering, reaching, and lifting; and less-than-frequent motion of the neck. (Pl.'s Br. at 12-13.) Ultimately, substantial evidence supports the ALJ's exclusion of all of these alleged limitations.

In terms of Plaintiff's alleged mental limitations, the ALJ determined, in accordance with the findings of the state agency psychologist, that Plaintiff has moderate difficulties in terms of social functioning and concentration, persistence, and pace as a result of her depression and anxiety. (Tr. at 17, 339.) Expressly because of these difficulties, he limited Plaintiff to simple, repetitive, routine tasks. (Tr. at 18.) In declining to find greater social limitations, the ALJ

specifically noted that "the medical evidence does not reflect that [Plaintiff] withdraws from all contact[,] and indeed her last work was as a waitress." (Tr. at 17.) The decision further reflects Plaintiff's testimony that she ceased her work as a waitress due to her inability to carry heavy trays, rather than any social difficulties, and that she enjoyed her previous job at a family- run dry cleaners. (Tr. at 19, 22.)

The opinion evidence cited in the decision also fails to indicate any basis for the extreme restrictions Plaintiff alleges here. The state agency mental assessments described Plaintiff's interpersonal skills as "adequate," but suggested a restriction to low interpersonal demands due to her dislike of crowds (Tr. at 23, 327, 341, 354), and the consultative examiner, Dr. Carol Gibbs, found no social limitations whatsoever, despite noting Plaintiff's "low frustration tolerance and poor coping skills" (Tr. at 21, 23, 412). In short, aside from Dr. Sanders' opinion, which the ALJ rejected for the reasons set out in subsection C above, nothing in the record supports Plaintiff's alleged need for social isolation and frequent breaks.

Plaintiff's contentions regarding additional physical limitations are equally unpersuasive. As extensively discussed in subsection B above, the ALJ found that Plaintiff's complaints of pain, numbness, weakness, and limited range of motion lacked objective support and varied widely. In particular, the decision recounts treatment records reflecting Plaintiff's full range of motion in her cervical spine (Tr. at 22, 315-16, 358) and normal strength and reflexes on many occasions (Tr. at 21, 294, 365-66, 371), and even physicians who noted occasional reductions in Plaintiff's strength and range of motion failed to connect those reductions to any limitations

beyond those included in the RFC (Tr. at 359, 365-66).[10]  Plaintiff, who bore the burden of establishing her RFC, offers no evidence, aside from her subjective complaints, to make this connection.  Therefore, substantial evidence supports the ALJ's RFC assessment as written.

E.     Hypothetical Question

Plaintiff next claims that "[t]he ALJ erred in formulating his hypothetical to the Vocational Expert, which did not include three restrictions that were part of the residual functional capacity finding in his decision: 1) the limitation to simple, routine, repetitive tasks, 2) the requirement to have a change of position every 30 minutes, for several minutes, and 3) the limitation to a non-production work setting."  (Pl.'s Br. at 10.)  Based on these alleged failings, Plaintiff contends that the ALJ failed to meet his burden at step five.

As mentioned above, the Appeals Council did, in fact, find that the ALJ "never asked the vocational expert to consider the exact residual functional capacity that is contained in finding 5 of the decision[,] thus making the decision, as written, inaccurate." (Tr. at 8.)  However, the Council also found that hypothetical questions at the hearing posed an RFC that was *more* restrictive than the RFC stated in the decision.  In particular, the questions contained restrictions related to a sit/stand option and no more than occasional movement of the neck which were not included in the RFC at finding 5 of the ALJ's decision.   (See Tr. at 39-45.)  Therefore, the Appeals Council concluded that Plaintiff "remains capable of performing the jobs named" by the vocational expert.  (Tr. at 8.)

_____

[10] In fact, the state agency physicians both determined that Plaintiff was capable of medium work, and the greater physical restrictions adopted in this case stemmed entirely from the ALJ "giving [Plaintiff] the maximum benefit of the doubt." (Tr. at 23.)

With respect to simple, routine, repetitive tasks, the ALJ did not ask the vocational expert to consider a hypothetical individual limited to simple, routine, repetitive tasks, but Plaintiff's counsel did, and the expert opined that the individual would still be capable of performing the jobs named in the initial hypothetical. (Tr. at 45-46.) As for Plaintiff's allegation regarding non-production work, the RFC does not include such a restriction. (See Tr. at 18.) Rather, the ALJ erroneously stated in his decision that he included such a limitation in his hypothetical question to the vocational expert. (Tr. at 25.) Such a misstatement does nothing to alter the accuracy of the jobs named by the expert or the ALJ's ultimate finding at step five of the sequential analysis. Substantial evidence therefore supports his decision.

F.      Vocational Expert Testimony

Finally, Plaintiff argues that the ALJ relied on erroneous vocational expert testimony at step five. The vocational expert testified that Plaintiff could perform the jobs of parking lot attendant, office helper, and photocopy machine operator, all of which are identified in the Dictionary of Occupational Titles ("DOT") as involving a reasoning level of two on the DOT's six-level scale. Plaintiff contends that her limitation to "simple, routine, repetitive tasks" precludes her from performing jobs above reasoning level one, the lowest level available. (Pl.'s Br. at 10.) A job rated at reasoning level one requires the worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." U.S. Dept. of Labor, DOT, App. C, available at 1991 WL 688702. In comparison, a job rated at reasoning level two requires the worker to "[a]pply commonsense understanding

to carry out detailed but uninvolved written or oral instructions." A level two job also requires the worker to "[d]eal with problems involving a few concrete variables in or from standardized situations." Id.

Plaintiff cites a number of non-binding cases holding that a reasoning level of two is *per se* inconsistent with a limitation to simple, routine, and repetitive tasks. (Pl.'s Br. at 11-12.) However, the majority of the courts to have considered the issue instead have found that such holdings grossly oversimplify the relationship between the SSA's reasoning scale and the far more nuanced DOT scale, and have concluded that limitation to simple, routine, and repetitive tasks does not conflict with a reasoning level of two. In Meissl v. Barnhart, 403 F. Supp. 2d 981 (C.D. Cal. 2005), the court described the differences in the two scales as follows:

> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); see also 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00(C)(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking . . . apprehend the most abstruse classes of concepts" at level six). To equate the Social Security regulations' use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are all encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

403 F. Supp. 2d at 984.

Although the Fourth Circuit has yet to rule on this issue, this Court, and many district courts within the Circuit, have concurred with the Meissl court in finding that a plaintiff limited

to work involving simple and repetitive tasks can perform jobs with a reasoning level of two. See, e.g., Marshall v. Colvin, No. 13-1585, 2014 WL 6066008 (D. Md. Nov. 12, 2014); Chestnut v. Colvin, 2014 WL 2967914 (W.D. Va. June 30, 2014); Snider v. Colvin, No. 7:12cv539, 2014 WL 793151 (W.D. Va. Feb. 26, 2014); Green v. Colvin, No. 1:10CV561, 2013 WL 3206114, at *8-9 (M.D.N.C. June 24, 2013); Vallejo v. Astrue, Civil No. 3:10-CV-00445, 2011 WL 4595259, at *13-14 (W.D.N.C. August 4, 2011); Lindsey v. Astrue, No. 9:10-1079, 2011 WL 2214779, at *3-4 (D.S.C. June 7, 2011); Taylor v. Astrue, No. 5:10-CV-263-FL, 2011 WL 1599679, at *12-13 (E.D.N.C. March 23, 2011). As one of these courts observed, "[a]lthough reasoning level two requires the understanding to carry out detailed instructions, 'it specifically caveats that the instructions would be uninvolved - that is, not a high level of reasoning.'" Pippen v. Astrue, No. 1:09cv308, 2010 WL 3656002, at *7 (W.D.N.C. August 24, 2010) (further noting that "work that requires 'commonsense understanding' is simple. Work that requires 'uninvolved written or oral instructions' is simple and routine") (internal quotations omitted). Accordingly, the performance of jobs with a reasoning level of two does not, as Plaintiff suggests, conflict with a limitation to simple, routine, and repetitive tasks. Because this argument forms the sole basis of Plaintiff's final step five challenge, the Court finds no error.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for a Judgment Reversing the Commissioner

[Doc. #8] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 3rd day of February, 2015.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge